UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Jennifer C.,[1] | ) | Civil Action No. 5:22-3363-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| Martin O'Malley,[2] Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This social security matter is before the court pursuant to 28 U.S.C. § 636(c) and Local Civil Rule 83.VII.02 (D.S.C.) for final adjudication, with the consent of the parties, of Plaintiff's petition for judicial review. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision the Commissioner of Social Security ("Commissioner"), denying her claim for Disability Insurance Benefits ("DIB") pursuant to the Social Security Act ("the Act"). Having carefully considered the parties' submissions and the applicable law, the court affirms the Commissioner's decision for the reasons discussed herein.

I.      Relevant Background

    A.      Procedural History

On February 12, 2020,[3] Plaintiff protectively filed for DIB under Title II of the Act, 42 U.S.C. §§ 401-433, alleging she became disabled on September 10, 2018. Tr. 194-95. After being denied initially, Tr. 88, and upon reconsideration, Tr. 112, Plaintiff requested a hearing

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.
[2] Martin O'Malley was confirmed as Social Security Commissioner on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the court substitutes Martin O'Malley for Kilolo Kijakazi as Defendant in this action.
[3] Although the Application Summary is dated March 10, 2020, Plaintiff's protected filing date, as noted on the Disability Determination and Transmittal, is February 12, 2020. *See* Tr. 88.

before an Administrative Law Judge ("ALJ"), Tr. 128-29. ALJ J. Petri conducted a hearing on November 23, 2021, taking testimony from Plaintiff and a Vocational Expert ("VE"). Tr. 40-59. Representing Plaintiff at that hearing was her attorney, Thomas Phillips. Tr. 40. The ALJ denied Plaintiff's claim in a decision dated December 21, 2021. Tr. 17-35. On February 10, 2022, Plaintiff requested review of this decision from the Appeals Council. Tr. 190-93. The Appeals Council denied her request on August 8, 2022, Tr. 2-6, making the ALJ's December 2021 decision the final decision of the Commissioner, Tr. 2. Plaintiff brought an action seeking judicial review of the Commissioner's decision in a Complaint filed September 30, 2022. ECF No. 1.

  B.  Plaintiff's Background

Plaintiff was born in December 1983 and was 34 years old as of her alleged onset date of September 10, 2018, and 36 years old as of her date last insured of September 30, 2020. Tr. 215. In her March 2020 Disability Report-Adult-Form Plaintiff indicated that she completed high school in 2002, did not attend special education classes, and had not completed any type of specialized job training, trade or vocational school. Tr. 209. She listed her past relevant work ("PRW") as a child caregiver (March 2006-July 2016) and grocery store deli worker (March 2018-Sept. 2018). *Id.* Plaintiff indicated she stopped working on September 10, 2018, because of her medical conditions, which she listed as epilepsy, social anxiety, and memory problems. Tr. 208. Plaintiff indicated that she was 5' tall, weighed 240 pounds, and her conditions caused her pain or other symptoms. *Id.*

A Disability Report-Appeal dated September 25, 2020, indicated a change in Plaintiff's condition of two seizures on August 8 and August 27 since her last report. Tr. 247. Plaintiff

indicated that since August 2020 she feels like her "memory is getting worse and [her] brain is slower." *Id.* Plaintiff noted that she has to "concentrate a lot more on one thing at a time." *Id.*

    C.    Administrative Proceedings

On November 23, 2021, Plaintiff appeared with counsel in Greenville, South Carolina for her administrative hearing before ALJ Petri. Tr. 40. VE Jewel Euto also appeared. *Id.* Due to the extraordinary circumstances of the coronavirus pandemic, the hearing was conducted telephonically. Tr. 42.

    1.    Plaintiff's Testimony

In response to questions from the ALJ Plaintiff testified that she graduated from high school, she is five feet tall, and she weighs 222 pounds. Tr. 45. Plaintiff testified that her weight is not stable and since her doctor increased her seizure medication and Effexor she has "lost a lot of weight." *Id.* Plaintiff indicated that she previously weighed 250 pounds and had lost the weight in one month. *Id.* Plaintiff stated that she is right-handed, married, and lives with her husband and two sons ages 17 and 9. Tr. 46. Plaintiff testified that her husband is employed and provides a source of income, and she has not received any benefits such as worker's compensation or unemployment. *Id.* She stated that she has a driver's license that she uses as an ID, but she does not drive and has not driven since August 2017 when she had her first seizure. Tr. 47. Plaintiff was unable to recall when she last worked, but the ALJ noted earnings records reflected she worked for a short time in 2018 at Ingles. *Id.* Plaintiff testified that she worked at Ingles full-time in the deli and the heaviest things she had to lift were the "hot bar pans" which weighed "about 15 pounds." Tr. 47-48. When asked if she also had to lift boxes, she testified that she did and the boxes of chicken weighed "about 20 pounds or a little bit more." Tr. 48. Plaintiff testified that she made roughly $8.00 an hour, and she worked six hours a day, five days a week.

3

*Id.* Plaintiff affirmed that her longest period of employment was at Seneca Baptist Child Day Care as lead teacher for the two-year-olds, and as a floater for other teachers. Tr. 48-49. Plaintiff testified that she is unable to work because she "was a liability because of [her] seizures." Tr. 49. Plaintiff testified that nothing else limited her ability to work. *Id.* Plaintiff affirmed that she always takes her medication like she is supposed to although there have been times when she could not afford it or ran out of her medication. *Id.* Plaintiff stated that she could not tell a difference when she did not take the medication because she still has seizures on the medication. *Id.* Plaintiff testified that her last seizure was the previous Wednesday, and it lasted "about three to five minutes." Tr. 50. Plaintiff stated that after her seizure she felt drained, and that feeling "can last anywhere from two to three days." *Id.* She stated that she has seizures two-to-three times a month, and she cannot feel them coming on—she has no warning. *Id.* Plaintiff testified that because of her anxiety she does not like to be in crowds, she does not go to the grocery store anymore, and she "basically stay[s] at home because [her] anxiety is so bad." *Id.* Plaintiff stated that her "husband driving on the road" also makes her anxiety bad because she worries about the cars and the potential for them having a wreck. *Id.* Plaintiff stated that they tried to attend a concert and she went into a seizure at the concert. *Id.* Plaintiff stated that when she is at home, she cannot take a shower or cook unless her husband or older son is at home. Tr. 51. She stated that she is "not allowed to lock any doors" in case she has a seizure. *Id.* She also stated that she has a Boxer dog that is trained for her seizures. *Id.* Plaintiff testified that on a typical day she sits on the couch and watches TV or sits on the front porch to give the dog "some outside time" until 2:30 when she walks to the bus stop to get her son. *Id.* She stated that when her oldest son gets home around 4:00 they start cleaning the house, and she can cook supper and take a shower. *Id.*

4

In response to questions from her attorney Plaintiff testified that when she was working at the daycare she had to lift all of the children in her room and they weighed "[p]robably 30 pounds or more." Tr. 52. Plaintiff affirmed that she has panic attacks if she is out with her husband driving or if she is in a "big" crowd. *Id.* She stated that she has anxiety medication that she takes twice a day, and even on the medication she still has panic attacks. *Id.* She testified the attacks last until she gets "out of the crowds, off the road and get back home." *Id.* She stated that she feels a little drained after a panic attack but not much; she is drained with her seizures. *Id.* Plaintiff testified that she was trying to get an appointment with a psychiatrist, but because of Covid the doctor is backed up. Tr. 53. Plaintiff stated that she gets two-to-three hours of sleep at night and is tired during the day. *Id.* She stated she is still having problems with her carpal tunnel syndrome and her "thumbs will lock up, [her] hands tingle, or they'll go to sleep." *Id.* Plaintiff stated she has trouble opening jars. *Id.* Plaintiff confirmed that her doctor had recently increased her seizure medication, but she was unable to recall the name of the medication. *Id.* Plaintiff stated that she now takes 300 mg every day, and the doctor also increased her anxiety medication to 25 mg. Tr. 54. Plaintiff confirmed that she had an upcoming appointment with her neurologist. *Id.* Plaintiff also testified that in October 2021 she had an ultrasound that revealed she had nine or more nodules on her thyroid. Plaintiff stated she is waiting for an appointment with a thyroid specialist. *Id.*

    2.    VE's Testimony

The VE described Plaintiff's PRW as childcare worker, Dictionary of Occupational Titles ("DOT") number 359.677-010, medium exertional level, SVP: 3, semi-skilled; and delicatessen worker, DOT number 317.664-010, medium exertional level, SVP:2, unskilled. Tr. 55. In her

first hypothetical the ALJ asked the VE to assume an individual of the same age, education, and past work as Plaintiff with the following limitations:

> Hypothetical number one is light work except this hypothetical individual could never climb. She could frequently handle and finger with her right dominant upper extremity. She could have no exposure to workplace hazards. She would be further limited to simple, routine tasks performed two hours at a time with only simple work-related decisions and few, if any, changes in the work setting, but no fast paced production rate work. And by that, I mean assembly line work. . . . She could have occasional interaction with the public.

Tr. 55-56. The ALJ acknowledged those limitations would exclude the past work at the medium level, but asked the VE if there would be other jobs. Tr. 56. The VE provided the following exemplar jobs: small products assembler, DOT 706.684-022, light exertional level, SVP:2, unskilled, approximately 230,000 positions nationally; leader tier, DOT 732.687-038, light exertional level, SVP:2, unskilled, approximately 202,000 positions nationally; and blending tank tender helper, DOT 520.687-066, light exertional level, SVP:2, unskilled, approximately 245,000 nationally. *Id.* The VE confirmed that the three jobs had a GED reasoning level of 1 or 2. Tr. 56-57.

For her second hypothetical the ALJ added to the limitations in the first hypothetical that the individual would be absent from work three or more days per month. Tr. 57. The VE testified the excessive absenteeism would preclude all work. *Id.* The VE stated her testimony was not inconsistent with the DOT and companion publications; however, because absenteeism is not specifically addressed in those publications she relied on "U.S. Department of Labor data and statistics, observation of jobs in the marketplace, and vocational education and training in determining employer tolerances." *Id.* The VE stated her answer would be the same as to the right dominant breakdown for handling and fingering, the pace, and contact with the public. *Id.*

6

Plaintiff's counsel asked if jobs would be eliminated or reduced if in the first hypothetical the individual was limited to occasional handling and fingering with the right. Tr. 57. The VE testified that two of the three identified jobs would be eliminated, but there would be other jobs available. Tr. 58. The VE stated that the job that would remain was the blending tank tender helper. *Id.* The VE stated that the limitation to occasional would not reduce the number of jobs available in the national economy because those jobs are at the occasional level. *Id.*

Counsel asked if any of the listed jobs would be available if the individual was off-task for 15 percent or more of the workday. Tr. 58. The VE testified that at 15 percent the jobs would be available, but if the individual "exceeds 20 percent off-task behavior that employability becomes an issue." *Id.* The VE stated that at 20 percent the jobs would not be available, "nor any jobs in the national economy." *Id.*

With no further testimony the hearing closed. Tr. 59.

II.     Discussion

    A.     The ALJ's Findings

In her December 21, 2021 decision, the ALJ made the following findings of fact and conclusions of law:

> 1.     The claimant last met the insured status requirements of the Social Security Act on September 30, 2020.
>
> 2.     The claimant did not engage in substantial gainful activity during the period from her alleged onset date of September 10, 2018 through her date last insured of September 30, 2020 (20 CFR 404.1571 *et seq.*).
>
> 3.     Through the date last insured, the claimant had the following severe impairments: seizures, carpal tunnel syndrome, obesity, depression, and anxiety (20 CFR 404.1520(c)).
>
> 4.     Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically

7

> equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5.   After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can never climb. She can frequently handle and finger with the right, dominant upper extremity. She can have no exposure to workplace hazards. She is limited to simple, routine tasks performed two hours at a time with only simple, work-related decisions and few, if any, changes in the work setting, but no fast-paced production rate work. She can have occasional interaction with the public.
>
> 6.   Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).
>
> 7.   The claimant was born on December [redacted] 1983 and was 36 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).
>
> 8.   The claimant has at least a high school education (20 CFR 404.1564).
>
> 9.   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10.  Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).
>
> 11.  The claimant was not under a disability, as defined in the Social Security Act, at any time from September 10, 2018, the alleged onset date, through September 30, 2020, the date last insured (20 CFR 404.1520(g)).

Tr. 22-23, 25, 33-35.

    B.    Legal Framework

1.  The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[4] (4) whether such impairment prevents claimant from performing PRW; and (5) whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision

---

[4] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the listed impairments, found at 20 C.F.R. Part 404, Subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his

9

regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if the claimant can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing the inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that the claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish the inability to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146, n.5 (regarding burdens of proof).

2.     The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the

---

impairment is disabling at Step 3).

proper legal standard in evaluating the claimant's case. *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d at 290 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (explaining that, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high," as it means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that the conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

C.   Analysis

Citing to SSR 16-3p, Plaintiff alleges that the ALJ erred in determining she did not meet or equal the criteria of Listing 12.06 due to the ALJ cherry-picking evidence that is not reflective of the longitudinal record. Pl.'s Br. 3, ECF No. 11. The Commissioner argues that substantial

evidence supports the ALJ's finding that Plaintiff's anxiety did not meet or medically equal the criteria of Listing 12.06. Def.'s Br. 10, ECF No. 13.

        1.      Listing 12.06

At Step Three of the sequential evaluation process, to determine whether a claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. pt. 404, Subpt. P, App. 1, the ALJ must identify the relevant listed impairments and then compare the listing criteria with evidence of claimant's symptoms. *Cook v. Heckler,* 783 F.2d 1168, 1173 (4th Cir.1986). "Without such an explanation, it is simply impossible to tell whether there was substantial evidence to support the determination." *Id.* Here, the ALJ determined that the "severity of claimant's mental impairments, considered singly and in combination, did not meet or medically equal the criteria of listings 12.04 and 12.06." Tr. 23.

Listing 12.06 concerns "anxiety and obsessive-compulsive disorders" and has three paragraphs designated as A, B, and C. Listing 12.06 may be satisfied if the claimant's mental disorder satisfies requirements of both paragraphs A and B or both paragraphs A and C. *See* 20 C.F.R. 404, subpt. P, app. 1, § 12.00(A)(1)-(2).

Plaintiff contends that the evidence in the record documents she has satisfied the requirements of Paragraph A and Paragraph B. Pl.'s Br. 4. The ALJ discussed only the Paragraph B and Paragraph C criteria. Tr. 23-25. Therefore, for purposes of this Order, the court focuses only on the Paragraph B criteria. To satisfy the "paragraph B" criteria, the mental impairments must result in either "extreme" limitation in at least one or "marked" limitation in at least two of the following four areas of mental functioning: (1) difficulties in understanding, remembering, or applying information; (2) difficulties in interacting with others; (3) difficulties in maintaining concentration, persistence, or pace; or (4) difficulties in adapting or managing oneself. 20 C.F.R.

Part 404, subpt. P, app. 1, § 12.06. A "marked limitation" occurs when "functioning in [an] area independently, appropriately, effectively, and on a sustained basis is seriously limited." 20 C.F.R. Part 404, Subpart P, App. 1, 12.00(F)(2)(d). An "extreme limitation" occurs when a claimant is "not able to function in this area independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Part 404, Subpart P, App. 1, 12.00(F)(2)(e).

Regarding the first area of mental functioning—understanding, remembering, or applying information—the ALJ found that Plaintiff had a moderate limitation. Tr. 24. The ALJ noted that although Plaintiff "alleged that she has difficulty understanding, remembering, and following instructions (11E/6)[,] [m]ental status exams throughout the longitudinal record report no deficits in memory or cognition (3F/8, 11, 17; 4F/4,11,17, 20-21, 57; 5F/4). However, the psychological consultative examiner noted that the claimant could recall 1 out of 3 objects at 5 minutes, suggesting a mild impairment in short-term auditory memory functioning (11F/3)." *Id.*

In the area of interacting with others, the ALJ found that Plaintiff had a moderate limitation. The ALJ noted:

> The claimant has alleged that she does not like to be around people in public (11E/6). However, the record shows that [s]he remained able to interact with others one-on-one. For example, the claimant lives with her husband and two sons and visits with friends at home (Hearing Testimony; 11E/5). In addition, providers have described the claimant as pleasant (3F/8). The claimant also told the consultative examiner that she got along well with others while working (11F/1). The record also shows that the claimant was able to function in public, as she is able to go grocery shopping with her husband, go to the emergency room, and go to doctor's appointments (Hearing Testimony; 11F/2).

*Id.* Regarding the functional area of concentrating, persisting or maintaining pace, the ALJ determined Plaintiff had a moderate limitation. The ALJ noted:

> The claimant has alleged that she has difficulty maintaining concentration and completing tasks (11E/6). Although the consultative examiner noted fair attention and fair to poor concentration, mental status exams throughout the longitudinal record report normal attention and concentration (3F/8, 11, 17; 4F/4, 11, 17, 20-

> 21, 23, 26, 29, 39, 57; 5F/4; 9F/6, 25; 10F/1; 11F/3; 13F/2). The claimant remained able to perform a variety of simple tasks, such as preparing simple meals, laundry, household cleaning, watching television, and listening to audio books (11F/2).

*Id.* As to the final Paragraph B criteria, adapting or managing oneself, the ALJ also determined that Plaintiff "had experienced a moderate limitation." *Id.* She noted:

> The claimant has alleged that she does not always handle stress or changes in routine well (11E/7). However, she is able to attend to her personal care without any reminders or problems, with the exception of someone in the house when she bathes, and uses an alarm to remind herself to take medication (11E/2-3). Moreover, she is able to participate in the care of her two children, ages 17 and 9 (Hearing Testimony). The claimant also told the psychological consultative examiner that she is fully capable of managing her funds independently and accurately, although her husband currently manages the household finances (11F/2). Mental status examinations show that the claimant typically has good insight and judgment (3F/8, 11, 17; 4F/4, 11, 17, 20-21, 57; 5F/4).

The ALJ concluded that because Plaintiff's mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, Plaintiff did not satisfy the Paragraph B criteria for Listing 12.06. *Id.* Citing to the evaluation of a consultative examiner, Plaintiff contends she meets the "B" criteria of Listing 12.06 because she has an extreme limitation in maintaining concentration, persistence, and pace. Pl.'s Br. 5.

        2.     Evidence of Extreme Limitation

On July 24, 2020, Licensed Clinical Psychologist, Cashton B. Spivey, Ph.D. conducted a Psychological Evaluation of Plaintiff upon referral of the S.C. Vocational Rehabilitation Department, Disability Determination Division to evaluate her cognitive, personality and emotional functioning. Tr. 892-95. In his Conclusions and Recommendations Dr. Spivey noted that Plaintiff scored 27 out of a possible 30 points on the Mini-Mental State Examination—a score that was "within normal limits." Tr. 894. He diagnosed Plaintiff with major depressive

disorder, unspecified anxiety disorder, and social anxiety disorder. *Id.* Dr. Spivey provided the following assessment:

> [Claimant] is an individual who would be capable of managing funds independently and accurately. This assessment is based primarily on an estimate of her general intelligence score likely falling in the low average range as well as her report that she has successfully completed high school and received a diploma. [Claimant] believes she is fully capable of managing funds independently. [Claimant] is currently performing certain household duties and chores independently. She is capable of doing the laundry, loading and unloading the dishwasher and cleaning the house. She would be capable of understanding simple and complex instructions as well as performing simple and complex tasks in the workplace. This assessment is based primarily on an estimate of her general intelligence score likely falling in the low average range. She would currently display difficulty relating well to others in the workplace due to the magnitude of her reported dysphoria, her reported emotional lability, and her report of social anxiety. [Claimant] believes she would have problems with persistence in the workplace due to her report of attention/concentration difficulties. During the evaluation, her attention was fair while the concentration ranged from fair to poor. Therefore, based on behavior observations made during this evaluation, she would display difficulty sustaining concentration and persisting in work related activities at a reasonable pace.

Tr. 894-95.

Plaintiff contends that the consultative examiner's finding that that she would display difficulty sustaining concentration and persisting in work-related activities at a reasonable pace is an "extreme" limitation in maintaining concentration, persistence and pace and she therefore meets the Paragraph B criteria. Pl.'s Br. 5. The Commissioner argues that the ALJ provided substantial evidentiary support for her finding that "Plaintiff's anxiety did not satisfy the exacting criteria of Listing 12.06 (Tr. 23-25)." Def.'s Br. 14.

The ALJ discussed Plaintiff's medical treatment record thoroughly over five pages in her decision. Tr. 26-30. The ALJ noted that she "considered the findings on mental status examination and opinions from the consultative examination; however, the longitudinal record shows that the claimant had been off her medications for approximately seven months and

15

returned to her primary care provider for medications just 7 days prior to the consultative examination (10F/4; 11F; 12F/13).[5]" Tr. 31. The ALJ indicated that she considered Plaintiff's mental impairments in the mental limitations in her residual functional capacity ("RFC") assessment, specifically finding that Plaintiff's "moderate limitation in concentrating, persisting or maintaining pace supports the limitation to no fast-paced production rate work." *Id.* As to Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms, the ALJ noted that the longitudinal record shows no specialized outpatient mental health treatment and no psychiatric hospitalizations. *Id.* The ALJ indicated that she considered Plaintiff's claims regarding the inability to afford healthcare pursuant to SSR 18-3p and found "no evidence indicating that the claimant exhausted all resources available to individuals who cannot afford medical treatment or medication such as hospitals, clinics, or community agencies." *Id.* Additionally, the ALJ indicated that along with numerous instances of noncompliance with prescribed medication, the record contained reports of positive drug screens for benzodiazepines, marijuana, and opioids. *Id.*

Regarding the opinion evidence related to Plaintiff's mental impairments, the ALJ considered the opinions of the State agency psychologists and the opinion of the consultative examiner. The ALJ determined that the "psychological consultants' determination that the claimant's anxiety and depression resulted in moderate limitations in three of the four paragraph B domains is generally supported by and consistent with the longitudinal record, especially the consultative examination performed by Dr. Spivey (11F). However, evidence presented at the

---

[5] Exhibit 10F/4 is a July 17, 2020 treatment record from Trinity Family Practice, LLC. Plaintiff appeared for "an acute visit for anxiety and depression." Tr. 888. Plaintiff indicated she had stopped taking her medications seven months prior because she could not afford them and indicated she wanted to restart her medications. *Id.* Exhibit 11F is Dr. Spivey's consultative Psychological Evaluation. Tr. 892-95. Exhibit 12F/13 is a duplicate copy of the July 17, 2020

16

hearing level, especially relating to the claimant's difficulty managing stress, frequent tearfulness, and noncompliance with prescribed medication, supports a determination that the claimant also has a moderate limitation in adapting or managing oneself."[6] Tr. 32. Specifically as to Dr. Spivey's opinion the ALJ found:

> Dr. Spivey's opinion that the claimant would display difficulty sustaining concentration and persistence in work-related activities is supported by his findings of fair attention and concentration. However, the undersigned notes that the opinion is not fully consistent with the longitudinal record, which reports normal findings relating to attention and concentration (3F/8, 11, 17; 4F/4, 11, 17, 20-21, 23, 26, 29, 39, 57; 5F/4; 9F/6, 25; 10F/1; 13F/2).[7] Moreover, the record shows that the claimant had been off prescribed medication for her mental impairments for the previous seven months and had only returned to her primary care provider for medication seven days prior to the consultative examination (10F/4; 11F; 12F/13).

Tr. 33.

As noted above, under the criteria for Listing-level mental disorders, an "extreme limitation" occurs when a claimant is "**not able to function** in this area independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Part 404, Subpart P, App. 1, 12.00(F)(2)(e) (emphasis added). Here, the consultative examiner never opined that Plaintiff met the requirements of a Listing, or that she had an extreme limitation in any functional area. His report supports the idea that Plaintiff could work—albeit with some "problems" or "difficulties"

---

treatment record.

[6] The State agency psychologists determined Plaintiff had moderate limitations in the first three functional areas of Paragraph B, and mild limitations in the area of adapt or manage oneself. Tr. 78, 97-98.

[7] The records from Exhibit 3F include Emergency Department ("ED") notes from Oconee Memorial Hospital in 2017 and 2018. Tr. 342, 345, 351. The records from Exhibit 4F include treatment notes from Don Bryant, M.D. Family Medicine from September 2017 to January 2019, Tr. 399, 406, 412, 415-16, 418, 421, 424; an October 2018 urgent care visit to AnMed Health, Tr. 434; and a May 2018 office visit to Dr. John Charles Saunders, Tr. 452. Exhibit 5F/4 is a January 2019 treatment note from Oconee Hospital ED. Tr. 465. Exhibit 9F contains records from two visits to AnMed Health ED in December 2019. Tr. 783, 802. The record from Exhibit 10F is an August 2019 treatment note from Trinity Family Practice, Tr. 885-86; and Exhibit 13F is an October 2021 treatment note from Easley Hospital ED, Tr. 916. The ALJ provided a

in certain areas. Tr. 894. Dr. Spivey noted that during the evaluation Plaintiff's "attention was fair while the concentration ranged from fair to poor." *Id.* He indicated only that Plaintiff would "display difficulty" in the area of sustaining concentration and persisting in work-related activities, not that she would be unable to function. Tr. 895.

Plaintiff disagrees with the ALJ's findings and wants the court to view the evidence she highlights differently. However, it is the responsibility of the ALJ to decide the legal question of whether a claimant's impairment meets or equals a Listing. SSR 96-6p, 1996 WL 374180, at *3. The ALJ is responsible for weighing the evidence and resolving any evidentiary conflicts, not the court. *Keene v. Berryhill*, 732 F. App'x 174, 177 (4th Cir. 2018) ("This court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law."). "In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (brackets, citation, and internal quotation marks omitted). Substantial evidence supports the ALJ's finding of a moderate limitation in the area of concentration, persistence, or maintaining pace.

3.     ALJ's Consideration of the Longitudinal Record

Plaintiff argues the ALJ failed to find she meets Listing 12.06 because the ALJ cherry-picked evidence that is not reflective of the longitudinal record. Pl.'s Br. 3. Plaintiff contends the "ALJ references Exhibit 14F/11[8] as evidence of normal attention and concentration" but that

---

detailed discussion of these records in her Decision. Tr. 26-29.

[8] This appears to be a scrivener's error on the part of Plaintiff. The ALJ does not reference Exhibit 14F/11 anywhere in her Decision; the transcript page numbers cited by Plaintiff

record "does not mention attention and concentration." *Id.* at 5. Based on this one record Plaintiff asserts the "ALJ clearly has not properly considered the longitudinal record and therefore Plaintiff's impairments were not properly evaluated and considered in the decision that was rendered." *Id.*

As noted above, the ALJ cites to many records in her Decision that support her finding of a moderate limitation in the area of concentrating, persisting or maintaining pace. In addition to page 11 of Exhibit 4F, the ALJ also cites to pages 4, 17, 20-21, 23, 26, 29, 39, and 57 of this exhibit—as well as seven other exhibits—as records reporting normal mood, affect, behavior, judgment, thought content, insight, memory, and cognition. Tr. 24. In her Listing analysis, the ALJ cited to Plaintiff's Function Report and medical records and noted favorable and unfavorable facts in finding moderate limitations and not marked or extreme limitations. Tr. 24. The ALJ accurately summarized the entirety of Plaintiff's medical records and testimony and the relevant medical opinions, including evidence supportive of limitations. Tr. 25-29. The ALJ considered Plaintiff's mental limitations in restricting her to "simple, routine tasks performed two hours at a time with only simple, work-related decisions and few, if any changes in the work setting, but no fast-paced production rate work" and only occasional interaction with the public. Tr. 25.

The court finds that the ALJ's decision is supported by substantial evidence. Plaintiff is correct that an ALJ may not simply "cherry pick" portions of the evidence to support his conclusions. Pl.'s Br. 3; *see Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017). Here, however, the ALJ directly addressed Plaintiff's medical records, acknowledged her several severe impairments, and explained with citations to the record why she found Plaintiff was not

---

correspond to Exhibit 4F.

limited to the extent she alleged. The ALJ did not improperly cherry-pick the record; her decision is supported by substantial evidence. *See Hall v. Saul*, No. 1:19-CV-01637-RBH, 2020 WL 6156535, at *9 (D.S.C. Oct. 21, 2020) (finding ALJ appropriately considered the record and had not "cherry-picked" evidence only to support his findings). Accordingly, the ALJ did not err in finding Plaintiff had not established a per se disability under Listing 12.06 (or any other listed impairments).

III.   Conclusion

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. The Commissioner performed an adequate review of the whole record evidence and that the decision is supported by substantial evidence.

Accordingly, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under the Act, the Commissioner's decision is affirmed.

IT IS SO ORDERED.

February 6, 2024                                              Kaymani D. West
Florence, South Carolina                                  United States Magistrate Judge